[Civ. No. 24144. Second Dist., Div. One. May 19, 1960.]

MABEL L. GISH et al., Respondents, v. CITY OF LOS ANGELES, Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Edwin F. Shinn and Weldon L. Weber, Deputy City Attorneys, for Appellant.

S. M. Dana and M. E. Hennes for Respondents.

WOOD, P. J.—This is an action for damages resulting from the collision of a police motorcycle and an automobile in an intersection of streets in Los Angeles. Plaintiff Clifford Gish was the operator of the automobile, and his wife plaintiff

Mabel Gish was a passenger therein. Harry Miller, a police officer of defendant city, was the operator of the motorcycle, and he was killed as a result of the collision. Mrs. Gish sought damages for personal injuries sustained by her as a result of the collision; and Mr. Gish sought damages for loss of services and companionship of Mrs. Gish as a result of her injuries. In a nonjury trial, judgment was in favor of Mrs. Gish for $17,000 and in favor of Mr. Gish for $2,000. Defendant appeals from the judgment. Appellant contends that plaintiffs were guilty of contributory negligence as a matter of law; the trial judge erred in giving plaintiffs the benefit of the presumption of due care; and that the judgment for $2,000 in favor of Clifford Gish is not supported by the evidence and is contrary to law.

The collision occurred in the intersection of Western Avenue and 89th Street. Western Avenue, which is 60 feet wide, extends northerly and southerly, and 89th Street, which is 36 feet wide, extends easterly and westerly. There is a double white line in the center of Western Avenue; and on each side of the double line, and about 10 feet therefrom, there is a single white line. There is an official traffic control signal at each of the four corners of the intersection. Western Avenue between 89th Street and 92d Street is in a business area, is well lighted, and is straight and level. The distance between 89th and 92d Streets is about 1,275 feet, and there is only one intersection between those streets—90th Street does not intersect Western.

On September 7, 1956, about 10:30 p.m., Mr. Gish was driving his 1956 Chevrolet automobile in a southerly direction on Western, and Officer Miller was operating a police motorcycle in a northerly direction on Western. Mrs. Gish was in the automobile. When Mr. Gish was approaching the intersection of Western and 89th he was in the southbound traffic lane next to the double white line. At the intersection of Western and 89th, while Mr. Gish was turning the automobile to the left, intending to go east on 89th Street, the motorcycle struck the center of the front bumper of the automobile. The place in the intersection where the collision occurred was approximately 20 feet south of a prolongation of the north curbline of 89th Street and 17 feet west of a prolongation of the east curbline of Western Avenue.

Mr. Gish testified that when he was approaching 89th Street, and was a short block therefrom, he was traveling at a normal rate of speed, and he put on the directional signal of his

automobile and he "put out his hand"; as he approached 89th Street the "light was green" (for traffic on Western); he looked in the southerly direction to observe traffic on Western; he did not remember whether he had observed any traffic there, or whether he had heard a siren, or had seen lights "approaching"; his automobile just "barely turned" and was traveling between 5 and 10 miles an hour when it was struck by the motorcycle. He also testified that about three and a half hours before the collision he drank one beer; he is blind in his right eye; and the vision in his left eye is reasonably good.

Mrs. Gish testified that, as the automobile approached the intersection, Mr. Gish put on the directional lights of his automobile and put his hand out; before the automobile started to turn, she looked toward the south on Western; the closest car lights were about a block away; she did not see any red lights, and she did not hear any siren before the collision.

Mrs. Schu, a witness called by plaintiffs, testified that on said September 7, she was a passenger in an automobile which was driven by Mrs. Stack and was traveling in a westerly direction on 92d Street; the signal at the northeast corner of the intersection of Western and 92d Street was red for traffic on 92d Street, and the automobile stopped at the northeast corner of that intersection; two officers were on motorcycles which were "stopped" on 92d Street at the southwest corner of the intersection; while the signal light was red for traffic on 92d Street, one of the officers (who was on a motorcycle) "shot out of there and zoomed" north on Western; when the signal changed to "go" for traffic on 92d Street, the other officer went north on Western; when the officers started north, the red lights were not lighted on either motorcycle; the automobile in which she was riding turned right and followed the officers; when that automobile was a short distance north of 91st Street, she heard a "little bit of a siren. It didn't get to a peak. It just went (indicating), then stopped." (The period of time indicated by the witness, as timed by the trial judge, was less than half a second.) Mrs. Schu testified further that when she was near to the scene of the collision, she did not "see any red lights on" the motorcycles.

Mrs. Stack, called as a witness by plaintiffs, testified that she was driving the automobile in which Mrs. Schu was riding; when she first saw the officers, they were on motorcycles which were stopped at the southwest corner of 92d and Western, and white lights of the motorcycles were "on"; when the first

officer turned left on Western, he was "going quite fast, without his red lights or siren on"; when her automobile had passed 91st Street and was about in the middle of the block north of that street, she heard a siren start up and "then just die down"; it "was just for a couple of seconds, very faint." (The witness demonstrated with her voice the period of time she heard the siren. Counsel for plaintiffs then stated: "For the record, the sound she made was less than a couple of seconds, as she described a couple of seconds." The trial judge said, "Oh, yes.") Mrs. Stack testified further that at 89th Street, the white lights on the motorcycles were "on" but "no siren or red light was on."

Mr. Daly, a witness called by plaintiffs, testified that on said September 7, 1956, about 10:30 p.m., he was back of a store on the southwest corner of 89th and Western; he heard a sound which was like a siren just starting; the sound continued about half a second.

Mr. Williams, a witness called by plaintiffs, testified that on said September 7 he was driving his automobile north on Western; when he crossed 92d Street, he saw two officers on that street; when he was near 91st, he looked in the mirror and saw the officers coming from 92d and going "down" Western; one motorcycle was about 25 feet behind the other; the headlights on the motorcycles were lighted; he did not see any red lights; he slowed down just before he came to the intersection where the accident happened; both motorcycles passed him; he did not "see any red lights on them"; he heard a siren a "split second" before the accident happened.

Officer Cowell, a witness called by defendant, testified that on said September 7, about 10:25 p.m., he and officer Miller were stopped on the south side of 92d Street approximately 50 feet west of the curbline of Western Avenue; the engines of the motorcycles were running and the headlights were not lighted; an automobile, which was traveling north on Western at a speed of 45 to 50 miles an hour, went through the intersection; Officer Miller turned on his red lights and his white lights and pulled out into the intersection in pursuit of the automobile; he (witness) followed Officer Miller; at the time Officer Miller started, the signal light for traffic on 92d Street was red; at the time the witness started out, the signal light for traffic on 92d was green; when he was "just north" of the intersection of Western and 91st, and half a block behind Officer Miller, he heard the sound of Miller's siren; Miller "set off" the siren as he (Miller) approached 89th; the witness heard the sound of the siren for approximately five sec-

onds; as he approached the intersection of 89th he saw an automobile, which was southbound on Western, making a slow left turn; it was traveling "five, ten, maybe a little more" miles an hour; the last time he heard the siren was just before the collision; at that time Officer Miller was 100 feet or less from the scene of the collision and the automobile was then making the left turn; at the time of the collision, he was "half a block, 200 or 300 feet" behind Officer Miller. The witness testified further that as he left 92d, he turned on his white light; he did not, at any time from the time he left 92d until the time of the collision, have a red light on or turn on his siren; the only automobile going north, in the area between 91st and 89th just prior to the collision, was the automobile Officer Miller was pursuing; that automobile had passed 89th before Mr. Gish started to make a left turn; he (witness) was traveling approximately 60 miles an hour at the time he was going north on Western and he estimated that Officer Miller was traveling about the same speed.

Officers Wheatley and Coffey, witnesses called by defendant, testified that, after the collision, they examined the motorcycle on which Officer Miller had been riding; the red light switch on the motorcycle was in the "on" position. Officer Wheatley testified further he gave Gish a sobriety test, and the test indicated that he was not intoxicated.

The court found that at the time of the collision plaintiff's automobile was traveling at a speed of approximately 5 to 10 miles an hour, and was in the process of making a left turn; Officer Miller was proceeding at a speed of approximately 60 miles an hour; defendant city, through its agent (Officer Miller), so negligently operated the motorcycle as to cause it to collide with the automobile; plaintiffs were not negligent in the operation of their automobile.

■■■ As above stated, appellant contends that plaintiffs were guilty of contributory negligence as a matter of law. Appellant argues that at the time Mr. Gish started to make a left turn, the motorcycle was approaching so closely as to constitute an immediate hazard; that the uncontradicted evidence shows that the motorcycle was clearly visible and should 'have been seen by anyone using due care; that since Mr. Gish testified that he looked but he did not see the motorcycle or any other traffic northbound on Western, his testimony showed that he was guilty of contributory negligence as a matter of law; and that since the collision occurred prior to the adoption

of section 163.5[1] of the Civil Code, his negligence is imputed to Mrs. Gish. The substance of that argument is that the evidence was uncontradicted that the motorcycle was clearly visible and should have been seen, that Mr. Gish testified that he did not see the motorcycle, and that such alleged contributory negligence was imputable to Mrs. Gish. As above shown, there was evidence that the motorcycle was traveling about 60 miles an hour in the nighttime; there was no red light on the motorcycle; and the siren was sounded faintly for a fraction of a second just before the collision. Mr. Gish testified that he did not see any traffic "down there" on Western that he "can remember"—the automobile which the officer was chasing might have passed him (Gish) but it was out of his way. Mrs. Gish testified that when their automobile started to turn, she looked to the south on Western, and the nearest lights were about a block away, and she did not see any red lights. Mrs. Schu, Mrs. Stack, and Mr. Williams testified to the effect that they did not see any red lights on Officer Miller's motorcycle. It thus appears that there was a conflict in the evidence as to whether the motorcycle was clearly visible and should have been seen. The evidence as to alleged contributory negligence was not uncontradicted. The question as to contributory negligence was a question of fact.

Appellant contends that the judge erred in affording the plaintiffs the benefit of the presumption of due care. That disputable presumption, which is stated in section 1963, subdivision 4, of the Code of Civil Procedure, is that "a person takes ordinary care of his own concerns." This contention of appellant is based upon certain statements which the judge made during the trial. While counsel for appellant (deputy city attorney) was arguing, during the trial, that Mr. Gish was guilty of contributory negligence, he said: "Now in support of the position of the defendant, we must not lose sight of the fact that we are entitled to the presumption that Officer Miller was exercising reasonable care and was obeying the law." Then the judge said: "So is the plaintiff." The deputy city attorney said: "No, they have testified in detail as to what they were doing." The judge said: "But Officer Miller is dead." The deputy said: "That is the only reason he is entitled to the presumption." The judge said: "There is a case right in there in the last advance sheets saying both of

---

[1] Section 163.5 of the Civil Code provides: "All damages, special and general, awarded a married person in a civil action for personal injuries, are the separate property of such married person."

them are entitled." The deputy said: "One testified; the other cannot testify. The reason we have the presumption in favor of the dead person is that he is deprived of that testimony." The judge said: "The dead person is entitled to the presumption? You have to remember, those motorcycles were going 60 miles an hour or better." The deputy said: "That is correct. If they had the red lights on they are free from having to comply with any of the rules of the road. The section of the code which covers that says that whenever the red light is on they have freedom from the rules of the road and they must sound their siren as reasonably necessary. The siren is not a requirement."

It will be necessary to make a detailed analysis of those comments. The analysis will show that appellant's contention is not sustainable. Appellant's position, with reference to the comments of the judge, seems to be that the judge was of the opinion that plaintiffs were entitled to a presumption that they (themselves) were exercising reasonable care and were obeying the law. It is to be noted that, at the beginning of the colloquy between the deputy city attorney and the judge, the deputy said that appellant (city) was entitled to the presumption that *Officer Miller* (the decedent) was exercising reasonable care and was obeying the law. The comment of the judge ("So is the plaintiff"), which followed the deputy's statement, could reasonably be interpreted to mean that "So is the plaintiff" entitled to the presumption that *Officer Miller* was exercising reasonable care and was obeying the law. It might well be that the judge was of the opinion that, under the circumstances, plaintiff Mr. Gish was entitled to presume, until the contrary appeared, that other persons using the highway (which would include Officer Miller) were exercising reasonable care and were obeying the law. Since plaintiffs testified regarding the happening of the collision, it does not seem reasonable that the judge (in making the statement "So is the plaintiff") meant that plaintiffs were entitled to a presumption that they themselves were exercising reasonable care and were obeying the law. When the judge thereafter made the comment regarding a case in the advance sheets, he said that case stated "both of them are entitled." In that statement he did not specify the presumption he was referring to. It might well be that the judge (in using the words "both of them are entitled") was expressing his opinion that both operators were entitled to presume, until the contrary ap-

peared, that other persons using the highway were exercising reasonable care and were obeying the law. After the judge made the comment that "both of them are entitled," the deputy commented further in explaining the presumption he was referring to; and in that connection he stated the reason for the presumption in favor of a deceased person. Thereupon, the judge made a comment which indicated that, in view of the high speed of the motorcycle, he was doubtful that the presumption of due care in favor of a deceased person was applicable to Officer Miller. (It is to be noted further that Officer Cowell, a witness on behalf of defendant, had testified as to details of the accident.) That last comment of the judge (which was partly in question form) was: "The dead person is entitled to the presumption? You have to remember, those motorcycles were going 60 miles an hour or better." Then the deputy said that the judge's statement as to speed was correct; but the deputy, in further explanation of the presumption in favor of a deceased person, commented to the effect that if the red light of Officer Miller's motorcycle was lighted and the siren was sounded as reasonably necessary, then Officer Miller was exempt from complying with the usual speed regulations. In summary, such analysis of the colloquy between the deputy and the judge indicates that during the first part thereof the deputy and the judge might have been referring to different presumptions—that the deputy was referring to the presumption of due care in favor of a deceased person, and that the judge might have been referring to the principle of law that a driver of a vehicle who is exercising reasonable care has the right to assume, until the contrary appears, that other users of the highway will exercise reasonable care. During the last part of the colloquy (beginning with the deputy's statement of the reason for the presumption in favor of a deceased person), it appears that the deputy and the judge were referring to the same presumption, that is, the presumption of due care in favor of a deceased person. The principles of law involved in the application of that presumption are elementary. The plaintiffs and witnesses on their behalf testified in detail as to the happening of the accident. In view of the ambiguities and the whole context of said colloquy, and in view of the elementary nature of the legal principles involved therein, it cannot properly be concluded that the judge, in weighing the evidence, gave the plaintiffs the benefit of a presumption that they were exercising reasonable care.

Appellant contends further that the portion of the

judgment in favor of Mr. Gish for $2,000 is not supported by the evidence and is contrary to law.

In the complaint it was alleged that as a result of the injuries sustained by Mrs. Gish, the plaintiff Mr. Gish had been and would be deprived of the "services, care, and attention and companionship of his said wife, all to his further damage in the sum of $5,000.00."

The court found that as a proximate result of the negligence of the defendant and due to the injuries sustained by Mrs. Gish, the plaintiff Mr. Gish has been and will be deprived of the services of his wife, and he is entitled to damages in the amount of $2,000.

Appellant argues that the word "services" used by plaintiffs in their complaint, and used by the court in its finding, was intended to refer "to what is known in the law as 'consortium' "; that there is no evidence showing such loss, or the loss of "services in any other sense." Appellant argues further that under California law a husband may not recover for loss of consortium.

As above shown, the complaint alleged that Mr. Gish had been damaged in the amount of $5,000 for loss of "services, care, and attention and companionship" of his wife. It is to be noted that the court found that he had been deprived of the *services* of his wife and that he was entitled to recover $2,000 therefor. There was no finding or judgment that Mr. Gish was entitled to recover for loss of consortium. In *Meek* v. *Pacific Electric Ry. Co.*, 175 Cal. 53 [164 P. 1117] it was said, at page 56: "The services rendered by a wife, aside from consideration of her society, or what is termed the *consortium*, damages for which are not recoverable in this state, may be and often are of such character that no witness can say what they are worth. Conceding that part of the service performed by the wife might be the subject of market value it is not true when applied to all, since the aid, advice, and assistance rendered a husband in conducting his affairs, and management of the home, is not to be tested by what such service could be hired for. Hence, 'there is no need of direct or express evidence of the value of a wife's services, either by the day, week, or any other stated period, in order to entitle the husband to recover for the loss thereof, as the relation which she sustains to him is a special and peculiar one, and the actual facts and circumstances of each case should guide the jury in estimating for themselves, in the light of their own observation and experience, and to the satisfaction of

their own consciences, the amount which would fairly and justly compensate the husband for his loss.' [Citations.] The fact that some of the cases supporting the proposition are from jurisdictions where both the *consortium* as well as the services of the wife are elements of damages recoverable by the husband render them of no less weight as authorities, since they hold that the *service*, whether physical in character or rendered in an advisory capacity, for which, as well as the *consortium*, recovery is sought, is not a subject as to the value of which direct evidence is required." (With reference to maintaining an action for loss of consortium, see *Deshotel* v. *Atchison, T. & S. F. Ry. Co.*, 50 Cal.2d 664 [328 P.2d 449].)

In the present case, there was evidence that as a result of the collision Mrs. Gish sustained a comminuted fracture of the right humerus (bone between shoulder and elbow), a severe swelling in the arm, and multiple bruises on her body; she was in a hospital one week immediately following the collision; prior to the collision, she had performed the usual and customary services of a housewife; after the collision, she could not do such things as mop, pick up heavy things or "hardly do anything with her right hand for a long time." The portion of the judgment in favor of Mr. Gish is supported by the evidence and is not contrary to law.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 12, 1960.